UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LURACO HEALTH & BEAUTY, LLC | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-51-SDJ |
| | § | |
| VU TRAN, ET AL | § | |

## MEMORANDUM OPINION & ORDER

In this patent infringement case, certain Defendants challenge Plaintiff Luraco Health & Beauty, LLC's ("LHB") right to assert the patents at issue. Before the Court are the Domestic Defendants'[1] Motion to Dismiss Plaintiff's Second Amended Complaint, (Dkt. #33), and Motion to Strike, (Dkt. #35), and LHB's Motion for Leave to file Nunc Pro Tunc Response to Motion to Dismiss, (Dkt. #36).

After considering the motions, the responses, and the applicable law, the Court **DENIES** the Domestic Defendants' motion to strike, **GRANTS** LHB's motion for leave to file nunc pro tunc response to the motion to dismiss, and **GRANTS** the Domestic Defendants' motion to dismiss. Further, on its own motion, the Court finds that, with respect to the remaining Defendant Xuyen, the case should be **DISMISSED for lack of jurisdiction**.

---

[1] The Defendants in this suit are a Vietnamese company, Xuyen Chau Luc Manufacturing-Trading Co., Ltd. ("Xuyen"), as well as the following Texas-based individuals and entities: Vu Tran; Nga Vo; Lucy Sam's Spa & Nail Supply, Inc.; Burry Cosmetic, Inc.; Sam's Spa Supply, Inc.; Sam's Nail Supply, Inc.; Sam's Nail Supply San Antonio, Inc.; Sam-Spa Holding Company, Inc.; and GTP International Corp. The Texas-based Defendants will be referenced collectively herein as the "Domestic Defendants."

# I. BACKGROUND

Kevin Le and Thanh Le (collectively, the "inventors") invented an improved bearing and shaft assembly for jet assemblies, an ornamental design for a jet pump housing, and an ornamental design for a foot spa. Their inventions are covered by Patent Nos. 9,926,933 ("the '933 patent"); D622,736 ("the D'736 patent"); and D751,723 ("the D'723 patent").

Shortly after filing applications for the patents at issue, the inventors assigned the rights to the then-pending patents to Luraco, Inc.,[2] a non-party to this action.[3] In 2018, Luraco executed an "Exclusive License Agreement" with LHB, licensing "all patents issued or [that] will be issued to [it] before or after the commencement date" to LHB. (Dkt. #31-1, Ex. A-3 at 5 n.1) (the "Agreement"). Although labeled an "exclusive" license agreement, the substance of the Agreement does not confer exclusionary rights on LHB; that is to say, the Agreement does not give LHB the exclusive right to make, use, or sell any inventions covered by the patents at issue, nor does it convey the right to license or sublicense the covered patents. The

---

[2] Plaintiff has asserted that Luraco Technologies, Inc. was an unregistered assumed name for Luraco, Inc., thus the two entities are the same. *See* (Dkt. #31 ¶ 15(b)(ii)); (Dkt. #31-1, Ex. H) (declaration of Thanh Le, CEO for Luraco, Inc. and LHB, explaining that the name "Luraco Technologies, Inc." was assumed by Luraco, Inc. from 2005-2017 and by LHB from 2017 to present). Domestic Defendants have not challenged this assertion. In this order "Luraco" will refer to both Luraco, Inc. and Luraco Technologies, Inc.

[3] The D'723 patent issued on March 15, 2016, but previously had been assigned to Luraco on June 24, 2013. (Dkt. #31-1, Ex. C-1). This assignment was recorded with the United States Patent and Trademark Office ("USPTO") on the same day. *Id.* The D'736 patent, issued on August 31, 2010, had been assigned to Luraco months prior on April 6, 2010. (Dkt. #31-1, Ex. B-1). The assignment was recorded with the USPTO on April 7, 2010. *Id.* The '933 patent issued on March 27, 2018, but had been assigned to Luraco Technologies, Inc. on June 24, 2013, and recorded the same day, and then re-assigned to Luraco, Inc. on January 29, 2018. (Dkt. #31-1, Ex. A-2).

Agreement states that it allows LHB to enforce the patents at issue, but Luraco also retains the right to enforce the patents. Thus, LHB may not indulge infringers. The Agreement further provides that LHB's license is non-transferable and that none of LHB's rights may be assigned without Luraco's prior written consent.

Less than a year after it entered into the Agreement, LHB commenced the current action, seeking to enforce the patents at issue against Domestic Defendants and Xuyen. Domestic Defendants are a collection of spas, salons, and salon and spa supply companies owned by husband and wife Vu Tran and Nga Vo. LHB alleges that Domestic Defendants are buying, selling, and using foot spa products created by Defendant Xuyen, a Vietnamese company, that infringe the '933 patent, the D'736 patent, and the D'723 patent. LHB further contends that Domestic Defendants and Xuyen are engaged in a joint business enterprise with the purpose of bypassing LHB's patents.

Domestic Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6). (Dkt. #33). After the Federal Circuit issued its decision in *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225 (Fed. Cir. 2019), Domestic Defendants clarified that the motion, which asserts that LHB lacks both Article III standing and "statutory standing," is brought pursuant to Rule 12(b)(6). The motion asserts that LHB lacks standing for two reasons: (1) the Agreement does not cover the patents at issue; and (2) even if the Agreement covers the patents at issue, it does not transfer all substantial rights or exclusionary rights in the patents at issue. Domestic Defendants further argue that

LHB fails to state a claim upon which relief can be granted against Defendants Sam's Holdings, Vo, and Tran.

LHB filed an untimely response to the dismissal motion. (Dkt. #34). Domestic Defendants submitted a reply and motion to strike LHB's response. (Dkt. #35). LHB in turn submitted a response to the strike motion. (Dkt. #37). LHB also filed an opposed Motion for Leave to File Nunc Pro Tunc Response to Motion to Dismiss, (Dkt. #36), to which Domestic Defendants replied, (Dkt. #38).

## II. MOTION TO STRIKE AND MOTION FOR LEAVE TO FILE NUNC PRO TUNC RESPONSE TO MOTION TO DISMISS

As a threshold matter, the Court must first determine if LHB's untimely response will be considered. Under Local Rule CV–7(e), "a party opposing a motion has fourteen days . . . from the date the motion was served in which to file a response." A court is not required to consider untimely responses, and if a party does not file a response to a motion, it is presumed that the party does not oppose the motion. *Id.* at CV–7(d). Here, it is undisputed that LHB filed its response to Domestic Defendants' dismissal motion seven days after the Local Rule CV–7(e) deadline had passed.

Federal Rule of Civil Procedure 6(b) affords district courts "broad discretion to expand filing deadlines," *Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 367 (5th Cir. 1995), and the Fifth Circuit "approache[s] the automatic grant of a dispositive motion, such as a dismissal with prejudice based solely on a litigant's failure to comply with a local rule, with considerable aversion." *Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012) (per curiam) (unpublished) (citing *John v. Louisiana*, 757 F.2d 698, 709 (5th Cir. 1985); *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)).

-4-

Indeed, "[m]any courts have required a showing from the moving party that it was prejudiced by the non-movant's failure to timely respond." *Miller v. 24 Hour Fitness USA, Inc.*, No. 4:16-CV-001, 2016 WL 9307504, at *2 (E.D. Tex. Oct. 25, 2016) (citing *Guilbeaux v. 3927 Found., Inc.,* 177 F.R.D. 387, 390 (E.D. Tex. 1998); *Energy Prod. Corp. v. Northfield Ins.*, Civil Action No. 10–0933, 2010 WL 2854296, at *2 (E.D. La. July 15, 2010)).

Here, LHB was seven days late in responding to Domestic Defendants' Motion to Dismiss. While no compelling reason has been offered for the tardy response, LHB's single dilatory filing does not rise to a level of systemic or intentional conduct. Further, although Domestic Defendants moved to strike, they have not alleged that they were prejudiced by the untimely response. Because it would be a drastic remedy to dismiss an action solely on these grounds, *see Durgin v. Graham,* 372 F.2d 130, 131 (5th Cir. 1967), the Motion for Leave to File Nunc Pro Tunc Response to Motion to Dismiss, (Dkt. #36), is **GRANTED** and the Motion to Strike, (Dkt. #35), is **DENIED**.

### III. MOTION TO DISMISS

## A. Legal Standards

### i.    Rule 12(b)(6)

Rule 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents

attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility." *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To determine whether the plaintiff has pled enough to "nudge[] their claims across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Id.* at 679–80 (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed if the court determines that the plaintiff pled "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

### ii.    Standing challenges in patent cases

Under 35 U.S.C. § 281, "[a] patentee shall have remedy by civil action for infringement of his patent." "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100. A successor in title to the patentee may be an assignee or a licensee who has become an assignee by virtue of holding "all substantial rights" to the patent. *Lone Star*, 925 F.3d at 1229.

Ascertaining standing in a patent-infringement case requires an inquiry into both Article III standing and what has been called "statutory standing." Generally, there are three categories of plaintiffs in patent enforcement actions: "(1) those that can sue in their own name alone; (2) those that can sue as long as the patent owner is joined in the suit; and (3) those that cannot even participate as a party to an infringement suit." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).

The first category, individuals who can sue in their own name, includes the patentee, an assignee, or a party to whom the patentee has transferred "all substantial rights" to a patent. *Id.* at 1339–40. Individuals in the first category have both statutory and Article III standing. *Id.* The second category, individuals who have exclusionary rights, but not all substantial rights, have Article III standing but lack statutory standing on their own. *Id.* at 1340; *see also Lone* Star, 925 F.3d at 1234–35. Thus, they must join the patentee and may enforce a patent only as a co-plaintiff.

*Morrow*, 499 F.3d at 1340. The third category of plaintiff has neither Article III standing nor statutory standing—a plaintiff who holds less than all substantial rights and lacks exclusionary rights. *Id.* Only those who possess exclusionary rights can experience an injury in fact, which is required to have Article III standing. *Id.*

In addition to Article III standing, a plaintiff attempting to enforce a patent must also have statutory standing. Plaintiffs who come alone must be more than mere licensees and hold "all substantial rights," to have statutory standing. *Lone Star*, 925 F.3d at 1229. If the plaintiff is not the patentee, the court must examine whether the party has an agreement with the patentee that "transferred all substantial rights to the patents." *Id.* (quoting *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1319 (Fed. Cir. 2009)) (internal quotation marks omitted). "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Waterman v. Mackenzie*, 138 U.S. 252, 256, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891). Courts are to "examine the 'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent." *Lone Star*, 925 F.3d at 1229. Likewise, "[d]etermining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant." *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).

Recently, the Federal Circuit clarified that statutory standing does not invoke a challenge to a court's jurisdiction. *Lone Star*, 925 F.3d at 1235 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014)). Thus, motions challenging whether a plaintiff is a patentee under section 281, or "whether a party possesses all substantial rights in a patent [do] not implicate standing or subject-matter jurisdiction." *Lone Star*, 925 F.3d at 1235–36.

### iii.    Governing Texas contract law

Because the Agreement provides that it shall be "construed by and governed in accordance with the laws of the State of Texas," and the parties do not dispute that Texas law governs the Agreement, the Court will apply Texas substantive law in interpreting the Agreement. *See Parental Guide of Tex., Inc. v. Thomson, Inc.*, 446 F.3d 1265, 1269 (Fed. Cir. 2006); *see also Power Lift, Inc. v. Weatherford Nipple–Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989) ("A license agreement is a contract governed by ordinary principles of state contract law."). Under Texas law, the interpretation of an unambiguous contract is a question of law for the court, *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999), and whether a contract is ambiguous is itself a question of law for the court to decide, *see Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 449 (Tex. 2011). The Texas Supreme Court has also made clear that, when a contract uses unambiguous language, it will be enforced as written. *See, e.g., In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015) (citing *State Farm Lloyds v. Page*, 315

S.W.3d 525, 527–28 (Tex. 2010)). Here, the Court concludes that the terms of the Agreement are unambiguous and will be enforced as written.

## B. Discussion

Domestic Defendants assert that LHB's suit should be dismissed because LHB lacks standing to enforce the patent. Specifically, Domestic Defendants contend that LHB has no rights in the patents at issue because the Agreement does not cover the asserted patents. Alternatively, Domestic Defendants argue that, even if the Agreement covers the patents at issue, it fails to convey to LHB sufficient rights to allow LHB to enforce the patents. The Court will address each argument in turn.

### i.   The Agreement covers the patents at issue.

Domestic Defendants allege that LHB's suit fails at the outset because the Agreement does not cover the patents at issue, and, therefore, LHB has not acquired any rights in the asserted patents. *See Morrow*, 499 F.3d at 1339. The Court disagrees.

The Agreement between LHB and Luraco covers all patents "*issued* or [that] will be *issued* to the Licensor before or after the commencement date." (Dkt. #31-1, Ex. A-3 at 5 n.1) (emphases added). Domestic Defendants contend that, because the agreement uses the word "issue" rather than "assign," the patents at issue are not covered by the Agreement. The patents at issue were *assigned* to Luraco by the inventors; thus, according to Domestic Defendants, the patents "issued" to the inventors, not Luraco. LHB responds that the Agreement should be read in light of

the parties' intentions as a whole, and to read the Agreement as suggested by Domestic Defendants would render it meaningless.

Both parties fail to consider that, under 35 U.S.C. § 152, a patent may *issue* to an assignee. "Patents may be granted to the assignee of the inventor of record in the Patent and Trademark Office, upon the application made and the specification sworn to by the inventor, except as otherwise provided in this title." 35 U.S.C. § 152. The patents at issue were all assigned to Luraco prior to issuance, making it possible that section 152 applies. While section 152 makes clear that a patent may issue to the assignee, section 307 of the Manual of Patent Examination and Procedure ("MPEP") establishes that certain procedures must be followed so that section 152 is invoked, including filing an appropriately completed "Fee(s) Transmittal form PTOL-85B" with the USPTO. *See* 37 C.F.R. § 3.81.

At this stage of the proceedings, it is unclear whether Luraco and the inventors invoked section 152 and the patents did indeed issue to Luraco. LHB has remained silent on the matter and has not discussed whether a Fee(s) Transmittal form PTOL-85B was filed such that section 152 would be invoked. However, on the face of each patent, Luraco is listed as "assignee," a fact that may establish that section 152 was employed by Luraco and the inventors. *See Hydril Co. v. Baker Hughes Inc.*, 121 F.3d 728 (Fed. Cir. 1997) (Newman, J., concurring) (stating that an assignee's name on the face of a patent makes it "probable" that section 152 was invoked and that the patent issued to the assignee); *see also* MPEP § 307 (implying that an assignee's name would not appear on the face of the patent unless section 152 has been invoked).

Additionally, in the assignment agreements for the 'D723 patent, the inventors instruct the USPTO that when the patent issues, it should be issued to the assignee, Luraco. (Dkt. #31-1, Ex. A-1 at 23–26). Whether recording this agreement with the USPTO was enough to satisfy the requirements of 37 C.F.R. § 3.81 is unclear and would depend, in part, on whether Luraco and the inventors filed a Fee(s) Transmittal form PTOL-85B and paid the required fees.

At the motion to dismiss stage, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Viewing the well-pleaded facts in the light most favorable to LHB, the name of the assignee on the face of the patents is enough for the Court to consider that the patents issued to Luraco, and, therefore, the Agreement, which includes all patents "issued" to Luraco, covers the patents at issue.

### ii. Because the Agreement does not confer exclusionary rights on LHB, it lacks Article III standing.

LHB filed this patent infringement suit asserting that it has "all substantial rights" to the patents at issue through the Agreement, making it a "patentee." However, LHB's mere assertions do not establish its status as a patentee with authority to enforce the asserted patents. At the dismissal stage of the proceedings, standing may be established through general allegations supported by specific facts. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To assess whether LHB has Article III standing and "statutory standing," the Court must determine whether LHB holds (1) all legal rights to the asserted patents, (2) exclusionary rights but not all substantial rights to the patents, or (3) less than all

substantial rights in the asserted patents *and* no exclusionary rights. *See Morrow*, 499 F.3d at 1339–41.

This inquiry is not determined simply by the title of the Agreement. When analyzing an agreement to determine what rights it confers, labels and titles do not control, but rather "one must . . . examine the substance of what was granted." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 874 (Fed. Cir. 1991); *see also Morrow*, 499 F.3d at 1340 n.7 (explaining that, "in determining whether a party holds the exclusionary rights, we determine the substance of the rights conferred on that party, not to the characterization of those rights as exclusive licenses or otherwise"). Thus, the fact that the Agreement is entitled "Exclusive License Agreement," and that the term "exclusive" appears in the body of the Agreement, does not answer the question of what rights are actually conferred on LHB.

Licensing agreements may transfer all substantial rights, some substantial rights, or merely grant a license. Individuals holding all substantial rights effectively become assignees, having the right to enforce the patents covered by a licensing agreement. *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007). An agreement that transfers "(1) the entire exclusive patent right, (2) an undivided interest in the patent rights, or (3) the entire exclusive right within any geographical region of the United States" is considered to be an assignment. *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016) (citations omitted) (quoting *Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1117

(Fed. Cir. 1996)). "An agreement that does not transfer one of these three interests is merely a license." *Id*. Here, LHB claims to have the entire exclusive patent right, which "must include all substantial rights in the patent," *id*., effectively becoming an assignee.

The Federal Circuit has established a non-exhaustive list of rights to review when determining if a licensor has transferred all substantial rights to the licensee:

> (1) the nature and scope of the right to bring suit; (2) the exclusive right to make, use, and sell products or services under the patent; (3) the scope of the licensee's right to sublicense; (4) the reversionary rights to the licensor following termination or expiration of the license; (5) the right of the licensor to receive a portion of the proceeds from litigating or licensing the patent; (6) the duration of the license rights; (7) the ability of the licensor to supervise and control the licensee's activities; (8) the obligation of the licensor to continue paying maintenance fees; and (9) any limits on the licensee's right to assign its interests in the patent.

*Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1343 (Fed. Cir. 2014), *judgment vacated on other grounds*, 135 S.Ct. 1846 (2015) (citing *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010)). Courts examine the 'totality' of the agreement, rather than merely weighing these rights as factors. *See Lone Star*, 925 F.3d at 1229. Determining whether all substantial rights have been transferred or whether a licensee is an exclusive licensee or a bare licensee "is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant." *Textile Prods., Inc.*, 134 F.3d at 1484; *Mann*, 604 F.3d at 1359.

While the inquiry into LHB's standing requires ascertaining the parties' intent, the Court need not discuss all of the rights listed in *Mann* to satisfy this

inquiry. In *Diamond Coating Techs., LLC,* the Federal Circuit reiterated that there is not a "complete list of rights that must be examined" when determining whether all substantial rights have been transferred, and proceeded to examine only two of the most salient rights: the exclusive right to make, use, and sell the invention covered by the patent; and the right to enforce and license the patent. 823 F.3d at 619. Similarly, in *Lone Star*, the Federal Circuit focused on the licensee's enforcement and alienation rights as the "salient rights" to be considered on the issue of standing to pursue a patent infringement suit. 925 F.3d at 1231. Because LHB does not enjoy any of these important rights as to the asserted patents in this case, it is clear that LHB does not hold all substantial rights to the patents, nor does it hold exclusionary rights, and the Court need not examine the remaining rights discussed in *Mann*.

### 1. LHB does not possess all substantial rights in the patents at issue.

The plain terms of the Agreement make clear that it does not confer on LHB all substantial rights in the asserted patents. To begin with, LHB has an incomplete right to enforce the patents. The Agreement provides that LHB can enforce the asserted patents at its "sole discretion" and have "complete control of the action." (Dkt. #31-1, Ex. A-3 ¶ 4.5). LHB also has "the right to sue, collect, and retain damages" and keep "all settlement payments or money received as a resolution of a lawsuit." *Id*. However, the Agreement further provides that, if LHB "fails to protect the Intellectual Property of [Luraco]," Luraco "*may act to protect* the intellectual property in question." *Id*. (emphasis added).

-15-

Thus, although LHB has enforcement rights, these rights are incomplete because LHB cannot indulge infringers. *See Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (holding that a plaintiff who "does not enjoy the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue" does not hold all substantial rights in a patent). Without the ability to indulge infringers, LHB cannot hold all substantial rights, and its rights to enforce the patents at issue are not complete. *See Mann*, 604 F.3d at 1362–63 (holding that "[b]ecause [the licensee] cannot indulge infringements for an unlimited time" the licensee did not have all substantial rights and its enforcement rights were incomplete); *see also Lone Star* 925 F. 3d at 1232.[4]

The Agreement also restricts LHB's rights as to alienation. It provides that LHB's license is non-transferable and that LHB may not assign any of its rights under the Agreement without Luraco's prior written consent. (Dkt. #31-1, Ex. A-3 ¶¶ 2, 14). These restrictions "ensure[] that [Luraco] will always control how the patents are asserted." *Lone Star*, 925 F.3d at 1233; *see also Propat Int'l Corp. v. Rpost, Inc.*,

---

[4] LHB asserts that the Agreement's language stating that Luraco "may act to protect the intellectual property in question" does not allow Luraco a right to enforce the patents at issue. This argument is unpersuasive. The "protection" of intellectual property traditionally includes enforcement actions. *See Waterman*, 138 U.S. at 255 (stating that enforcement actions must be brought in the name of the owner of a patent to "*protect* the rights of all parties" in the asserted patent) (emphasis added); *see also Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995) (stating that a bare licensee may not join an infringement action because "he has nothing to protect."); *Resonant Sensors Inc. v. SRU Biosystems, Inc.*, 651 F. Supp. 2d 562, 569 (N.D. Tex. 2009) (the licensing agreement at issue stated that the licensee had the "explicit duty to protect the patents by bringing suit for any suspected infringement."). Further, this provision is included in the same paragraph of the Agreement that describes LHB's right to enforce the patents at issue. The plain import of the paragraph is that Luraco may take action to enforce the patents at issue if LHB fails to do so.

473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the transferee] all substantial rights under the patent."). The restrictions on alienation imposed by the Agreement on LHB, which particularly limit LHB's ability to transfer or assign the assets, are "fundamentally inconsistent with a transfer of all substantial rights." *Lone Star*, 925 F.3d at 1233.

Further, the Agreement states that LHB "shall not distribute, sell, license or sub-license, let, trace, or expose for sale the Asset to a third party." (Dkt. #31-1, Ex. A-3 ¶ 4.2).[5] As the Federal Circuit has explained, "[a] licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1380 (Fed. Cir. 2000). Likewise, limitations on a licensee's ability to sub-license or assign a patent is indicative that the agreement did not transfer all substantial rights to a patent. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (citing *Abbott*, 47 F.3d at 1132).

Finally, the Agreement allows Luraco, the licensor, to make, use, and sell products covered by the asserted patents. *See Propat,* 473 F.3d at 1194 (holding that a transfer of enforcement rights agreement, which was silent on the right to make, use, or sell the invention, did not transfer all substantial rights, and that the licensee could not join the licensor to remedy standing because it was not an exclusive

---

[5] The "Asset" is defined as "any licensed patent . . . provided by Licensor." (*Id.* ¶ 1.3).

licensee). Taken together, these aspects of the Agreement confirm that Luraco did not transfer to LHB all substantial rights in the patents at issue.

### 2. LHB also lacks exclusionary rights as to the patents at issue.

Given LHB's lack of statutory standing, the Court must determine whether LHB has Article III standing and may be a co-plaintiff in an enforcement action. A party must have Article III standing in order to participate in an enforcement action. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To have Article III standing, a plaintiff must "show that its case or controversy is amenable to resolution by a federal court, by demonstrating that it suffers an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment." *Lone Star*, 925 F.3d at 1234 (citing *Lujan,* 504 U.S. at 560–61). In a patent action, only those who hold, at a minimum, exclusionary rights to the patent, can be injured through infringement and have Article III standing. *Morrow*, 499 F.3d at 1339; *see also Lone Star*, 925 F.3d at 1234 (recognizing that "those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed"). The "exclusionary rights" in a patent include "an exclusive license, the exclusive right to license, and the right to sublicense." *Morrow*, 499 F.3d at 1341. LHB enjoys none of these rights under the Agreement.

First, LHB does not have the exclusive right to make, use, and sell products covered by the patents at issue. Exclusionary rights require, at least, an exclusive license. *Textile Prods., Inc.*, 134 F.3d at 1484. An exclusive license is "a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is

given leave." *Int'l Gamco, Inc.*, 504 F.3d at 1277 (internal quotation marks omitted) (quoting *W. Elec. Co.,* 42 F.2d at 118). Such a promise must be "clearly manifest." *Textile Prods., Inc.*, 134 F.3d at1484.

Here, LHB has neither the right to practice the patent nor the promise of exclusivity from Luraco, the licensor. Although the title of the Agreement is "Exclusive Licensing Agreement," there is no promise that Luraco will not grant anyone else a license to the patents at issue. *See Vaupel Textilmaschinen,* 944 F.2d at 874 (confirming that titles alone cannot establish or convey rights). The Agreement states that Luraco grants to LHB "an exclusive, non-transferable license for the Term to use [the patents at issue] for the specific purpose specified in this Agreement subject to the terms set out in this Agreement." (Dkt. #31-1, Ex. A-3 ¶ 2). But the "purpose" of the Agreement is undefined throughout the document. And although a prefatory clause references LHB's wish to "obtain an exclusive right" to make, produce, use, and sell "specific products for use in accordance with the terms set forth below," the body of the Agreement fails to actually provide LHB with any such right to make, use, and sell products covered by the asserted patents, much less an exclusive right do so. (Dkt. #31-1, Ex. A-3 at 1).[6]

Under Texas law, "[c]ourts are without authority to supply the missing terms of a contract which the parties themselves had either not seen fit to place in their

---

[6] The Agreement is structured such that the prefatory clauses appear before the portion of the document describing the substance of the parties' agreed rights and obligations. *See* (Dkt. #31-1, Ex. A-3 at 1) (the "whereas" clauses precede the paragraph stating that "the parties agree as follows . . ."). The body of the Agreement includes no reference whatsoever to making, using, or selling products covered by the asserted patents.

agreement, or which they omitted to agree upon." *Providence Land Servs., LLC v. Jones*, 353 S.W.3d 538, 543 (Tex. App.—Eastland 2011, no pet.) (quoting *Dempsey v. King*,    662 S.W.2d 725, 728 (Tex. App.—Austin 1983, writ dism'd).   Here, the Agreement does not specify the "purpose" of the license conferred on LHB. "When a contract is silent, the question is not one of interpreting the language but, rather, one of determining its effect." *Id.* The Court cannot supply a purpose that the parties did not see fit to include. Because LHB was not given the exclusive right to make, use, or sell products covered by the patents referenced in the Agreement, the Court cannot imply that it has this right. The right, therefore, was retained by Luraco, the licensor. Without the right to practice the patent, LHB cannot be an exclusive licensee. *See Propat*, 473 F.3d at 1194 (holding that a transfer of enforcement rights agreement, which was silent on the right to make, use, or sell the invention, did not transfer all substantial rights, and that the licensee could not join the licensor to remedy standing because it was not an exclusive licensee).[7]

Further, like the plaintiff in *Morrow*, LHB also lacks the rights to license and sublicense the patents at issue, (Dkt. #31-1, Ex. A-3 ¶ 4.2), an "important aspect" of

---

[7] LHB asserts that, reading the Agreement as a whole, it should be construed to provide LHB the exclusive right to make, use, or sell products covered by the asserted patents. This argument fails because there is simply no reference in the Agreement to LHB practicing the patents, only to LHB *enforcing* the patents. Consistent with controlling Texas law, the Court cannot supply the missing terms invoked by LHB. Instead, the Court must apply "the general rule of the law of contracts that . . . the courts will give effect to the intention of the parties as expressed or as is apparent in the writing." *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). Because it fails to provide LHB the right to practice the patents at issue, the Agreement, in effect, operates as a hunting license—albeit granting LHB less than complete enforcement rights.

exclusionary rights. 499 F.3d at 1341. Thus, the Agreement does not confer any exclusionary rights on LHB.

Without exclusionary rights, LHB not only lacks statutory standing, it also lacks Article III standing because it cannot suffer any injury in fact from Defendants' alleged infringing activities concerning the patents at issue. *See Lone Star*, 925 F.3d at 1234 (confirming that, in a patent action, only those who hold, at a minimum, exclusionary rights to the patent, can be injured through infringement and have Article III standing); *Morrow*, 499 F.3d at 1339 (same). The Court must therefore dismiss LHB's claims against Domestic Defendants for lack of jurisdiction.

*       *       *

Whether a party has met the requirements of Article III "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth*, 422 U.S. at 498. Having found that LHB does not have Article III standing, the Court, on its own motion, finds that the matter must also be dismissed with respect to Xuyen, the remaining Defendant who did not join Domestic Defendants' motion to dismiss. LHB asserts the same asserted patents against Xuyen, citing to the same Agreement to establish its standing. As previously discussed, the Agreement does not confer Article III standing upon LHB. The Court need not address any other arguments raised by the parties, having found that it lacks jurisdiction.

## IV. CONCLUSION

For the forgoing reasons, the Motion for Leave to File Nunc Pro Tunc Response to Motion to Dismiss, (Dkt. #36), is **GRANTED**; the Motion to Strike, (Dkt. #35), is **DENIED**; and the Motion to Dismiss, (Dkt. #33), is **GRANTED**, and the matter is **DISMISSED for lack of jurisdiction**. The Court, on its own motion, finds that the matter must also be **DISMISSED for lack of jurisdiction** with respect to Xuyen, the remaining Defendant.

The clerk is **ORDERED** to close the case.

**So ORDERED and SIGNED this 27th day of May, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE